## BRYDON v. BIG VEIN COAL CO. OF WEST VIRGINIA.

(Circuit Court of Appeals, Fourth Circuit. February 1, 1921.)

No. 1819.

Mines and minerals ⬿59—Finding that coal delivered by lessee was unmerchantable held to defeat his right to accounting and injunction against rescission.

In a suit by a lessee of coal properties, who had contracted to sell to his lessor a stated quantity of coal, for an accounting for coal delivered under the contract, and an injunction against an attempt to cancel the lease, a finding by the trial court, based on sufficient evidence, that the coal delivered was not merchantable, so that defendant was justified in refusing to accept it, sustains a decree for defendant, regardless of whether the coal came from the source required by the contract.

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Suit by Howard P. Brydon against the Big Vein Coal Company of West Virginia. Decree for defendant, and complainant appeals. Affirmed.

Hugh Warder, of Grafton, W. Va., and D. Lindley Sloan, of Cumberland, Md., for appellant.

Joseph Addison and Randolph Barton, Jr., both of Baltimore, Md. (William MacDonald, of Keyser, W. Va., on the brief), for appellee.

Before KNAPP and WOODS, Circuit Judges.

KNAPP, Circuit Judge.   On September 11, 1916, the appellee, Big Vein Coal Company of West Virginia, leased certain coal mining properties to the appellant, Brydon, for the term of three years, with option to him of renewal for two years more.   At the same time Brydon contracted to sell to the appellee, at stated prices, 900 tons of "Shaw" coal per month until the 31st of March, 1917.   A supplemental agreement, evidenced by letters exchanged, extended the latter contract to the end of the lease.   Afterwards a controversy arose in regard to this contract, and in August, 1918, appellee brought suit for specific performance and other purposes.   On December 9th of that year this suit was settled, and an agreement entered into which provided that appellant should pay $4,500 for damages to that date for nonshipment of coal, that the contract of September 11. 1916, was a binding contract on both parties, and that it was to remain in full force during the term of the lease.

Following this settlement Brydon resumed the shipment of coal and did ship 26 cars, which were rejected because the coal was not merchantable.   The result was appellant's refusal to ship any more coal and appellee's refusal to give further orders.   Thereupon, in March, 1919, appellant brought this suit.   The bill alleges in substance that appellee failed to perform the contract on its part by refusing without cause to receive and pay for the 26 cars, and by refusing to furnish appellant with orders for further shipments; alleges a profit of 60 cents per ton on the coal which appellee had agreed to take under the contract; and further alleges that the appellee intended, if possible, to cancel appellant's lease on account of unpaid royalties.   An injunction is prayed for restraining the appellee from attempting to cancel the lease, and it is further prayed that an accounting be had between the parties and a decree ordered for the contract price of the coal shipped and for appellant's prospective gains and profits by reason of the appellee's refusal to accept the shipments.   The answer alleges that the 26 cars were properly rejected, because the coal was of such inferior quality as to be practically worthless, and sets up the amounts due at the time for royalties under the contract.   The trial court found in effect that the appellee was justified in refusing to accept the 26 cars, because the coal was not merchantable, and in January, 1920, entered a decree in favor of appellee for $4,525, from which this appeal is taken.

The case requires but a word of comment.   Passing the question whether the rejected cars contained Shaw coal, which appellee denies, it is enough to say that the coal actually shipped, from whatever source it came, was found by the trial court to be of such extremely inferior quality as not to be merchantable, and therefore not a good delivery. Ample testimony supports this finding and the record furnishes no ground for setting it aside.

It follows that the decree must be affirmed.